IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | RECEIVED |
| ) | |
| Plaintiff, ) | 2007 APR 13 A 10: 36 |
| ) | |
| ) | DEBRA P. HACKETT, CLK |
| v. ) | U.S. DISTRICT COURT |
| ) | Civil Action No. MIDDLE DISTRICT ALA |
| THE ASHFORD HOUSING AUTHORITY and ) | 1:07CV323-WKW |
| SHIRLEY FOXWORTH, ) | |
| ) | **COMPLAINT** |
| Defendants. ) | |

The United States of America alleges:

## NATURE OF ACTION

1. This action is brought by the United States on behalf of Rudy Livingston, Wesley Livingston, and Connie Lashley to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 (the "Fair Housing Act").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

3. Venue is proper under 28 U.S.C. § 1391(b), because the claims alleged herein occurred in the Middle District of Alabama.

## THE DEFENDANTS

4. The Ashford Housing Authority ("The Authority") is a public housing authority in Houston County, Alabama, and receives federal funding from the Department of Housing and Urban Development ("HUD"), pursuant to 24 C.F.R. § 905.10 and 24 C.F.R. § 990.

5. The Authority owns and operates Magnolia Apartments, which are dwellings within the meaning of 42 U.S.C. § 3602(b).

6. At all times relevant to this matter, Shirley Foxworth served as the Executive Director and on-site manager of Magnolia Apartments.

## THE ADMINISTRATIVE COMPLAINANTS

7. Rudy Livingston ("Mr. Livingston"), is 52 years old and has been diagnosed with bi-polar disorder, paranoid-schizophrenia, congestive heart failure, kidney disease, and type II diabetes. These conditions substantially limit one or more of Mr. Livingston's major life activities. Mr. Livingston is a person with a "handicap" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h).

8. Wesley Livingston, of 3160 Rocky Creek Road, Ashford, Alabama, is the brother of Mr. Livingston.

9. Connie Lashley, of 337 Bruner Mill Road, Ashford, is the sister of Mr. Livingston.

## FACTUAL ALLEGATIONS

10. Mr. Livingston entered into a residential lease agreement with the Authority for an apartment located at 103 Magnolia Drive, Apartment #68, Magnolia Apartments ("the subject dwelling") on or about November 3, 2003.

11. Mr. Livingston's tenancy at the subject dwelling was subject to federal regulations governing the terms and conditions of a public housing leasehold, pursuant to 24 C.F.R. § 966 et seq.

12. Mr. Livingston's rent at the subject premises was $58 per month.

13. Mr. Livingston paid his rent in full for each of the five months in which he resided at

the subject premises (November through March 2004).

14. Mr. Livingston paid his March 2004 rent for the subject premises on or about March 11, 2004.

15. Notwithstanding the fact that Mr. Livingston was current in his rent payments as of March 11, 2004, the Defendants issued a termination of tenancy notice to Mr. Livingston on March 26, 2004. The March 26th notice did not specify the grounds for the termination.

16. On or about March 30, 2004, the Authority issued two additional termination of tenancy notices to Mr. Livingston, each alleging that he had violated paragraph II(A) of his lease, which states that "rent is due and payable . . . on the first day of each month and is delinquent after the 10th day of the month."

17. One of the March 30, 2004, termination of tenancy notices, referred to in paragraph 16, above, purported to terminate Mr. Livingston's tenancy retroactively on October 29, 2003. The second notice referred to in paragraph 16, above, purported to terminate his tenancy on April 10, 2004, eleven days after the date of the notice.

18. On or about March 31, 2004, Mr. Livingston experienced a diabetic coma and was taken to the hospital by ambulance.

19. Ms. Lashley went to the Authority's office on April 1, 2004, and met with Ms. Foxworth to notify her that Mr. Livingston was in a coma at the hospital. Ms. Lashley asked whether she needed to make any arrangements for Mr. Livingston regarding his apartment, and whether she needed to pay the rent for April 2004, on behalf of her brother.

20. During the April 1, 2004 meeting, Ms. Foxworth told Ms. Lashley words to the effect that Ms. Lashley need not worry about Mr. Livingston's rent. Ms. Foxworth told Ms. Lashley to

give the Authority an update concerning Mr. Livingston's condition by about the 10th of April.

21. During the April 1, 2004 meeting, Ms. Foxworth did not indicate that Mr. Livingston's rent was past due, and she did not express other concerns regarding Mr. Livingston's tenancy.

22. Mr. Livingston awoke from his coma in early April 2004. On April 9, 2004, he was transferred to an assisted living facility in Blountstown, Florida. Mr. Livingston expected to stay in the assisted living facility for approximately two weeks and then to return to his apartment.

23. On or about April 12, 2004, Ms. Foxworth called Wesley Livingston and told him that she had re-rented the subject premises and that, unless he picked up Mr. Livingston's possessions immediately, the Authority would remove them.

24. On or about April 12, 2004, Ms. Lashley called Ms. Foxworth to find out why the Authority had re-rented Mr. Livingston's apartment and to confirm that Mr. Livingston intended to return to his apartment. During the telephone conversation on April 12, 2004, Ms. Foxworth confirmed that the Authority had re-rented Mr. Livingston's apartment and that he could not return.

25. On April 14, 2004, the Authority re-took possession of the subject premises, removed Mr. Livingston's possessions, and had them moved to a storage facility.

26. At no time did the Authority provide sufficient written notice or initiate formal eviction proceedings in state court to obtain a judgment of possession for Mr. Livingston's apartment, as required by federal regulations, Alabama state law, and Mr. Livingston's lease for the subject premises. 24 C.F.R. § 966.4(l)(4); Alabama Code § 6-6-310, et seq. (1975); Alabama Code § 35-9-80, et seq. (1975) (repealed 2007); Authority Lease paragraph XII

4

("Termination of Tenancy And Evictions") and paragraph XIII ("Eviction Only By Court Action").

27. On or about July 15, 2004, Enrique Lang, an investigator employed by the Fair Housing Agency of Alabama, interviewed Ms. Foxworth concerning the allegations in this case. Referring to Mr. Livingston, Ms. Foxworth stated during the interview words to the effect that she could not "deal with someone with mental problems."

28. As a result of the Defendants' actions as described herein, Ms. Lashley and Wesley Livingston expended time and financial resources to assist Mr. Livingston after his eviction. This assistance included, but was not limited to, obtaining alternative housing, replacing household possessions that had been destroyed in storage, and traveling from Ashford to Florida and Georgia to visit with and care for Mr. Livingston. In addition, Ms. Lashley and Wesley Livingston suffered emotional distress and loss of income following Mr. Livingston's eviction as a result of the Defendants' actions as described herein.

29. On or about August 26, 2004, Mr. Livingston filed a timely complaint with HUD, alleging that the Defendants had discriminated against him on the basis of disability, in violation of the Fair Housing Act.

30. On or about December 20, 2005, the HUD complaint was amended to add Wesley Livingston and Connie Lashley as complainants.

31. Pursuant to the requirements of 42 U.S.C. § 3610(a) and (b), the Secretary of HUD (the "Secretary") conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.

32. Based upon the information gathered in the investigation, the Secretary, pursuant to

42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred. Therefore, on November 6, 2006, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the above-named Defendants with engaging in discriminatory practices, in violation of 42 U.S.C. § 3604(f) of the Fair Housing Act.

33. On November 14, 2006, Mr. Livingston, Wesley Livingston, and Ms. Lashley elected to have the claims asserted in HUD's Charge of Discrimination resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

34. On November 15, 2006, the Chief Administrative Law Judge issued a Notice of Election of Judicial Determination and terminated the administrative proceeding in the HUD complaint.

35. Following the Notice of Election, the Secretary authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C. § 3612(o).

## **FAIR HOUSING ACT VIOLATIONS**

36. The Defendants, through the actions described above, have:

   a. Discriminated in the rental of, or otherwise made unavailable or denied, a dwelling to Mr. Livingston because of his handicaps, in violation of 42 U.S.C. § 3604(f)(1); and

   b. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of Mr. Livingston's handicaps, in violation of 42 U.S.C. § 3604(f)(2).

37. Mr. Livingston, Wesley Livingston and Connie Lashley have suffered damages as a result of the Defendants' conduct and are "aggrieved persons" within the meaning of 42 U.S.C. § 3602(i).

38. The discriminatory actions of the Defendants were intentional, willful, and taken in disregard of the federally protected rights of Mr. Livingston, Wesley Livingston, and Ms. Lashley.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an ORDER that:

1. Declares that the Defendants' actions described above violate the Fair Housing Act;

2. Enjoins the Defendants, their agents, employees, assigns, successors, and all other persons in active concert or participation with them from discriminating on the basis of handicap, in violation of the Fair Housing Act; and

3. Awards monetary damages to Mr. Livingston, Wesley Livingston, and Connie Lashley, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

The United States further prays for such additional relief as the interests of justice may require.

ALBERTO R. GONZALES
Attorney General

_/s/ Wan J. Kim /AA_
WAN J. KIM
Assistant Attorney General

_/s/ Steven H. Rosenbaum_
STEVEN H. ROSENBAUM
Chief, Housing and Civil Enforcement Section

By: _/s/ Lori K. Wagner_
MICHAEL S. MAURER
Deputy Chief
LORI K. WAGNER
Attorney
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue
The Northwestern Building
Washington, D.C. 20530
Telephone No.: (202) 305-3107
E-mail: lori.wagner@usdoj.gov

LEURA G. CANARY
United States Attorney

By: _/s/ Stephen M. Doyle_
STEPHEN M. DOYLE
Chief, Civil Division
Assistant United States Attorney
Attorney for Plaintiff
Post Office Box 197
Montgomery, AL  36101-0197
District of Columbia Bar No. 422474
Telephone No.:  (334) 223-7280
Facsimile No.:  (334) 223-7418
**E-mail:  stephen.doyle@usdoj.gov**

8